# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAVID MACDONALD,

    Plaintiff,

v.                                                     Case No. 19-12183

CITY OF DETROIT,
DETROIT BUILDING AUTHORITY,
and DETROIT LAND BANK AUTHORITY,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS**

**I. INTRODUCTION**

Plaintiff David MacDonald sues Defendants City of Detroit (the "City"), Detroit Building Authority ("DBA"), and Detroit Land Bank Authority ("DLBA") alleging various constitutional violations stemming from Plaintiff's involvement in the Detroit Demolition Program ("DDP" or the "Program"). Currently pending before the court are three motions to dismiss the amended complaint, one filed by each Defendant. The motions have been fully briefed. Upon review of the parties' filings, the court concludes that a hearing is not necessary and that the motions can be decided on the briefs. *See* E.D. Mich. LR 7.1(f)(2). For the reasons explained, below, the court will grant in part Defendants' motions and will dismiss Count I (Due Process), Count II (Equal Protection), and Count IV (Invasion of Privacy) of the amended complaint.

## II. BACKGROUND

The following facts are drawn from the amended complaint and the documents attached thereto. In 2014, Detroit Mayor Mike Duggan initiated the Program to help combat blight within the City by demolishing abandoned houses. The Program is administered by the DLBA, which is overseen by the DBA. The Program relies on demolition contractors and requires contractors to test and remediate homes for asbestos prior to demolition.

Once a contract has been awarded to a demolition contractor, either the City or the DLBA will issue a Notice to Proceed, and the specific house is scheduled for asbestos abatement. The asbestos abatement process is tracked using the website Salesforce. Each property with the Program has a unique Salesforce webpage, and all parties involved in the demolition process can access the Salesforce website for each individual house.

After the house is abated for asbestos, it is scheduled for a "Post Abatement Verification" ("PAV") inspection, and the inspection date is added to Salesforce. If the PAV inspection report indicated that the asbestos has been totally abated, the contractor may schedule a demolition date for the house, also referred to as a "Planned Knock Date." The Planed Knock Date must be entered into Salesforce as must the date on which the remnants are hauled away and the date on which the lot is backfilled. A final inspection occurs after the grading to determine whether the demolition was properly completed.

In August 2017, Plaintiff began working for Den-Man contractors, a demolition subcontractor for the Program. While employed at Den-Man, Plaintiff "was critical" of

another contractor, BBEK Environmental and its owner, Kevin Woods, for their handling of asbestos abatement work for the Program. Plaintiff alleges that he voiced his concerns about BBEK Environmental to Defendants. (ECF No. 17, PageID.165, ¶¶ 33–39.) Woods has since been banned from the Program for falsifying Asbestos Clearance Reports and is currently being "prosecuted" by the Michigan Department of Environmental Quality. (*Id.* at ¶ 34.)

On March 5, 2018, Den-Man hired Renee Alter as an administrative assistant. She was eventually tasked with scheduling demolition work for Den-Man. Several months later, Den-Man also hired Dennis Kolorov to manage backfilling operations. Shortly thereafter, Plaintiff began looking for other employment. He asserts that his responsibilities were transitioned to Alter on September 10, 2018, but also alleges that he continued to manage backfilling operations for Den-Man as of September 17, 2018. (ECF No. 17, PageID.166–68 ¶¶ 44, 55.)

On September 10, 2018, Alter sent a list of houses scheduled to be demolished that week to Plaintiff, which included a house located at 14444 Flanders. The house at 14444 Flanders contained unabated asbestos. According to Plaintiff, had Alter entered the address into the Salesforce website pursuant to the City's policy, Salesforce would not have allowed a demolition date for 14444 Flanders to be scheduled. However, the property was not entered into Salesforce prior to demolition, and 14444 Flanders was demolished on September 13, 2018. Plaintiff asserts that he had no involvement in the decision to demolish 14444 Flanders.

Approximately one hour after the demolition, Alter informed Plaintiff that 14444 Flanders had not yet been abated for asbestos before demolition. Plaintiff "immediately"

advised David Holman of Den-Man that the property had not been properly abated. Holman reported the incident to the DBA in an email dated October 26, 2018. The email reads as follows:

> I regret to inform you that the 1444 Flanders [m]ay have been wrecked and completed without removal of asbestos.
>
> David Macdonald [sic] who was in charge of my demolition operation and scheduling demolished this house on 9-13-18. His last day of work was 9-14-18. I have no knowledge of any abatement work that was done prior to demolition.
>
> I was unaware that this job was scheduled or completed until after [D]ave [M]c[D]onald had left.

(ECF No. 17-5, PageID.233.)

Plaintiff began working for another contractor, Smalley Construction, on September 17, 2018. In response to the October 26 email from Holman, the Deputy Director of the DBA, Timothy Palazzolo, issued a stop-work order to Smalley Construction, Plaintiff's new employer. (ECF No. 17-7, PageID.240). Attached to the stop-work-order was a letter dated November 6, 2018, from the Director and Health Officer of the City's Health Department, Joneigh S. Khaldum. In relevant part, the letter stated:

> It has come to my attention that a home located at 14444 Flanders in the City of Detroit was demolished without proper environmental abatement. I am [sic] receipt of documentation indicating that Mr. David MacDonald—then employed by Den-Man construction—either ignored or overlooked explicit instructions from an abatement contractor that stated the following in regards to 1444 Flanders: "DO NOT WRECK" and "bad survey."
> . . .
> Accordingly, pursuant to my authority to issue "rules and polices necessary for enforcement" of any laws pertaining to "public health and safety" (*see* Detroit City code 24-1-1.2), I am hereby declaring that it is the policy of the City of Detroit Health Department that no demolition within the City limits shall be conducted by any company, firm, or LLC that

employs Mr. David MacDonald in a demolition-related capacity. This policy is effective immediately , and shall remain in effect until rescinded by me.

(ECF No. 17-7, PageID.253.)

The letter was sent to all contractors involved in demolition work under the Program. Plaintiff claims that he was not afforded a hearing prior to the issuance of stop-work order, which he claims violated of the DBA's contractor discipline policy. Additionally, Plaintiff alleges that neither the DBA or the DLBA contacted him prior to issuing the stop-work order.

On November 29, 2018, Plaintiff entered into a voluntary separation agreement with Smalley Construction. (ECF No. 17-11.) Thereafter, he filed the instant lawsuit.

### III. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. DISCUSSION

Each Defendant filed a motion to dismiss. Defendants' arguments on each of the four claims largely overlap. Unless specified otherwise, the court analyzes Defendants' arguments together.

### A. Due Process (Count I)

Plaintiff asserts both a substantive and procedural due process claim under the Fourteenth Amendment. (ECF No. 17, PageID.174, ¶ 87.)

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. From these protections spring the rights to substantive and procedural due process. As a threshold matter to asserting either a substantive or procedural due process claim, a plaintiff must first identify a protected fundamental right or liberty or property interest. *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). "Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened the notions of due process." *Id.* Plaintiff asserts a violation of both his substantive and procedural due process rights based on his "protected liberty interest in continuing his employment." (ECF No. 26, PageID.941.) Specifically, he asserts a liberty interest to private employment "free from governmental intrusion." (*Id.*) Plaintiff asserts that private employment free from government interference also constitutes a fundamental right. (*Id.* at 944.)

Protected liberty interests under the due process clause include "'the right of the individual . . . to engage in any of the common occupations of life[.]'" *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972)). This liberty interest extends to "the liberty to pursue a calling or occupation, and not the right to a specific job*." Wright v. Genesee Cty. Corp.*, 659 F. Supp. 2d 842, 850 (E.D. Mich. 2009) (Cox, J.) (quoting *Bernard v. United Twp. High Sch. Dist. No. 30*, 5 F.3d 1090, 1092 (7th Cir. 1993)). The Sixth Circuit has explained that a plaintiff's loss of private employment does not ripen into an actionable due process violation unless the plaintiff is effectively precluded from practicing his trade *in toto*:

7

> Although infringement of a plaintiff's state-sanctioned right to pursue a particular activity may rise to the level of a constitutional deprivation, the loss of one job and certain future opportunities does not constitute deprivation of a protected liberty interest. *See, e.g., Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998) (finding no deprivation of a protected liberty interest where the plaintiff worked for a non-governmental employer and lost a private, rather than public, position); *Aversa v. United States*, 99 F.3d 1200, 1216 (1st Cir. 1996) (stating that where a third party "refuses to hire the plaintiff solely as a result of the defendant's defamation, the plaintiff has not described a viable constitutional claim"). Indeed, it is only where the defendant's action effectively precludes the plaintiff from practicing his trade with all employers or customers that the plaintiff's liberty interest in pursuing his occupation is infringed. *Compare Blackburn v. City of Marshall*, 42 F.3d 925, 938 (5th Cir. 1995) (finding that, where defamatory statements caused the plaintiff, a towing and wrecker service, to be removed from the sheriff's "on-call" list such that the plaintiff could no longer perform services for the City, the plaintiff had not been deprived of a liberty interest in his occupation because he could still perform services for private clients) *with Cowan v. Corley*, 814 F.2d 223, 227-28 (5th Cir. 1987) (finding that sheriff's removal of plaintiff's towing service from sheriff's "on-call" list deprived the plaintiff of a protected liberty interest because the on-call list at issue was a "comprehensive framework for managing virtually every aspect of the wrecker industry" in the county and served as a referral service for both government and private contracts).

*Jackson v. Heh*, 215 F.3d 1326 (Table), 2000 WL 761807 *6 (6th Cir. June 2, 2000) (affirming dismissal of a § 1983 due process claim).

Plaintiff urges the court to avoid relying on the unpublished *Jackson* decision. He argues that Defendants' policy of prohibiting any company which employs him in a construction related capacity from participating in demolition work for the Program forced him from his employment with Smalley Construction and "effectively precludes him from practicing his trade with all demolition contractors." (ECF No. 26, PageID.942). The court does not agree. Assuming, *arguendo*, that the November 6, 2018 letter from Director and Health Officer Khaldum amounts to a policy for purposes of sustaining a § 1983 claim, the policy does not prevent Plaintiff from practicing his trade. The policy

8

narrowly applies to companies that employ Plaintiff in a demolition-related capacity seeking to contract with the City of Detroit; the policy does not preclude Plaintiff from working on projects for other municipalities or private clients, nor from holding non-demolition-related jobs within the Program. While the policy may make Plaintiff less attractive to some employers, the court is persuaded by the Sixth Circuit's reasoning in *Jackson* that the policy does not constitute a complete impediment to Plaintiff's chosen career such as to give rise to a due process violation. The cases relied on by Plaintiff to refute this conclusion are distinguishable.

First, Plaintiff relies on *Greene v. Mcelroy*, 360 U.S. 474, 492 (1959) for the proposition that "the right to hold specific private employment free from unreasonable government interference is a fundamental right which comes within the 'liberty' and 'property' concepts of the Fifth Amendment." (ECF No. 26, PageID.944.) But Plaintiff's reading of *Greene* misconstrues the narrow holding of the Supreme Court. The Court considered the following issue in *Greene*:

> [W]hether the Department of Defense ha[d] been authorized to create an industrial security clearance program under which affected persons may lose their jobs and may be restrained in following their chosen professions on the basis of fact determinations concerning their fitness for clearance made in proceedings in which they are denied the traditional procedural safeguards of confrontation and cross-examination.

*Id.* at 493. The *Greene* plaintiff was a contractor who lost his security clearance under the Department of Defense program. *Id.* at 475–76. The loss of the plaintiff's security clearance caused him to lose his job and "seriously affected, if not destroyed, his ability to obtain employment in the aeronautics field" because obtaining a security clearance was a mandatory requirement for the industry. *Id.* at 492. These facts distinguish *Greene* from the case at hand. Unlike the plaintiff in *Greene*, Plaintiff's chosen

9

profession is not entirely dependent on receiving work or authorization from Defendants. The instant policy did not preclude Plaintiff from practicing his chosen profession; it restricted his ability to pursue a particular job.

The second case relied on by Plaintiff, *United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208 (1984), is similarly unpersuasive. That case involved a *Privileges and Immunities* challenge to a municipal ordinance which limited the hiring of out-of-state employees. The case did not involve any due process claim and its reasoning cannot extend to the instant case.

The facts of this case do not implicate any recognized fundamental right or liberty interest. Accordingly, both Plaintiff's procedural and substantive due process claims fail as a matter of law. The court will grant Defendants' motions to dismiss.[1]

---

[1] Defendants DBA and DLBA also argue (1) that Plaintiff lacks standing to pursue his claims because he voluntarily left his employment at Smalley Construction and (2) that Plaintiff has not alleged sufficient facts to trigger municipal lability. (ECF No. 19, PageID.331–334; ECF No. 20, PageID.399–401.) The court finds that Plaintiff has sufficiently alleged that the letter dated November 6, 2018 (ECF No. 17-7) announces a policy within the meaning of § 1983 and that Defendants helped enforce the policy, thereby potentially exposing them to liability. Additionally, the court is satisfied that Plaintiff has standing to pursue his claims because he alleged that the policy made it impossible for him to keep his current job. *See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 404 (6th Cir. 1999) ("The 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of a barrier, not the ultimate inability to obtain the benefit. . . . [T]he 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract."). Plaintiff has sufficiently alleged an injury-in-fact by claiming that Defendants' policy impacted his ability to "compete on equal footing" for demolition work. *Id.*

## B. Equal Protection (Count II)

The equal protection clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Under the equal protection clause, "states cannot make distinctions which either [(1)] burden a fundamental right, [(2)] target a suspect class, or [(3)] intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). In his response, Plaintiff clarifies that his equal protection claim falls under the third category; intentionally treating one differently from others similarly situated.[2] Plaintiff also explains that he is proceeding under a "class-of-one" theory. (ECF No. 26, PageID.952.)

"[A] plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory. *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012). "[T]he Supreme Court has recognized that a 'class-of-one' may bring an equal protection claim where the plaintiff alleges that: (1) he or 'she has been intentionally treated differently from others similarly situated'; and (2) 'there is no rational basis for the difference in treatment.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff must allege that he was

---

[2] Plaintiff also argues that he has stated an equal protection claim under the first theory—burdening of a fundamental right. (ECF No. 26, PageID.952.) As explained above, Plaintiff has not identified a recognized fundamental right. Accordingly, the court will analyze his equal protection claim under the third theory alone. *See supra* Part IV.A.

11

similarly situated to comparators in "in all material respects." *Loesel*, 692 F.3d at 462. Here, Plaintiff fails to satisfy either of these requirements.

First, Plaintiff has not sufficiently alleged the existence of a comparator. The complaint alleges, in a conclusory manner, that "Plaintiff was treated by the Defendants adversely and differently than other individuals and entities who were similarly situated to plaintiff." (ECF No. 17, PageID.176.) Such threadbare allegations fall short of the required factual pleadings to state a claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Plaintiff attempts to remedy this deficiency in his response, arguing that he identified one comparator in the complaint, Dennis Korov, and that it can be inferred from his allegations that "the DBA does not have a policy forbidding its demolition contractors from employing Kolorov, nor does it mete out punishment for the same offense equally[.]" (ECF No. 27, PageID.1091.) This argument misses the mark. Though Plaintiff alleges that Korov had "a reputation for demolishing buildings that had not been abated for asbestos and for demolishing the incorrect house" (ECF No. 17, PageID.166), the complaint contains no allegations that Defendants knew of Korov's alleged "reputation" or acted on such. The absence of such allegations is fatal to Plaintiff's claim because Defendants issued the policy in question based on their belief that Plaintiff was responsible for the demolition of 14444 Flanders. (ECF No. 17-7.) Therefore, Plaintiff cannot sustain his class-of-one theory. He has not alleged sufficient

facts on which to claim that he was treated differently from a comparator. *Loesel*, 692 F.3d at 462. [3]

Plaintiff's allegations also fall short of the second requirement to prevail on this class-of-one theory. To properly allege that "the adverse treatment [he] experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational[,]" Plaintiff must either "negate every conceivable reason for the government's actions or [demonstrate] that the actions were motivated by animus or ill-will." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (reversing Rule 12(b)(6) dismissal of the plaintiff's equal protection claim under a class-of-one theory). Neither the complaint or Plaintiff's responses make this required, affirmative showing. The November 6, 2018 letter states that "[t]he demolition of homes that have not undergone proper abatement poses health and safety risks" and that "[s]uch demolitions could also violate legal frameworks[.] (ECF No. 17-7.) Plaintiff offers no arguments to refute this cited justification for the policy, nor does he sufficiently allege that Defendants' actions were motivated by ill will or animus. Accordingly, the court will grant Defendants' motions as to Count III and dismiss Plaintiff's equal protection claim without prejudice.

---

[3] In his response, Plaintiff also adds information about a new, potential comparator and states that he "intends to seek leave form this Court to amend his complaint to add this additional information." (ECF No. 27, PageID.1091.) The addition of these new factual allegations, however, for the reasons explained below, does not save Plaintiff's claim.

## C. First Amendment (Count IIII)

To state a claim for first amendment retaliation, Plaintiff must allege that: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc)).

Plaintiff bases his First Amendment retaliation claim on his allegations that he complained to Defendants about BBEK Environmental and its owner, Kevin Woods, regarding the handling of asbestos abatement, and that Defendants subsequently issued the policy banning contractors who hired Plaintiff in a demolition capacity from participating in the Program. (ECF No. 27, PageID.1092.) Defendant DBLA argues that Plaintiff cannot satisfy any of the required elements to state a retaliation claim. (ECF No. 20, PageID.411–17.) The remaining Defendants focus their arguments on the causation element. (ECF No. 18, PageID.305–308; ECF No. 19, PageID.341–42.) The court analyses each of these elements below.

### 1. Protected Conduct

Defendant DLBA first argues that Plaintiff has not alleged any form of protected activity because Plaintiff's criticisms of BBEK Environmental were not a matter of public concern. (ECF No. 20, PageID.413.) The court disagrees. The complaint alleges that Plaintiff voiced his criticisms to Defendants about "BBEK Environmental and its owner, Kevin Woods, for their handling of the asbestos abatement portion of the demolition

projects[.]" (ECF No. 17, PageID.165, ¶ 32.) Proper asbestos remediation in residential areas is a matter of public concern because it impacts the health and safety of the community. *See Connick v. Myers*, 461 U.S. 138, 146 (1983) (defining matters of "public concern" as "relating to any matter of political, social, or other concern to the community."). Next, DBLA argues that Plaintiff's criticisms are not protected because he was speaking pursuant to his job duties as an employee of a government contractor. (ECF No. 20, PageID.414.) Again, the court disagrees. The cases relied on by DBLA are distinguishable because they involve county and city employees speaking on matters related to their official job duties, not employees of government contractors like Plaintiff. *Keeling v. Coffee Cty.*, 541 F. App'x 522, 523 (6th Cir. 2013) (plaintiff was the Permits Clerk in the Coffee County Codes Department); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 535 (6th Cir. 2012) (plaintiff worked as the public records coordinator for the City of Memphis). The court is not persuaded that critiquing the work of another contractor fell within Plaintiff's "official duties" as an employee of a private company. Thus, Plaintiff has satisfied his initial burden of pleading that his criticisms constituted a matter of public concern.

### 2. Adverse Action

Next, DBLA argues that Plaintiff has not alleged adverse action because the policy challenged by Plaintiff "would not deter an ordinary person from speaking out about some other contractor's actions." (ECF No. 20, PageID.415.) DLBA offers virtually no analysis for this position. At the motion to dismiss stage, the court must accept as true all of Plaintiff's well-pleaded factual allegations and also draw "all reasonable inferences in favor of the Plaintiffs." *Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir.

15

2015). The allegations reasonably suggest that the policy, which restricted Plaintiff's employment options, was issued in response to his protected speech. Such conduct squarely falls within the scope of adverse actions previously recognized by the Sixth Circuit. *See Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019) (quoting *Thaddeus-X*, 175 F.3d at 396) ("We have previously noted that examples of adverse actions 'include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote.'").

### 3. Causation

Finally, all Defendants argue that Plaintiff's allegations do not suggest a close, temporal proximity between Plaintiff's protected conduct and the adverse actions alleged. However, for purposes of a 12(b)(6) motion, Plaintiff need only allege, not prove, causation. *See Pack v. Martin*, 174 F. App'x 256, 265 (6th Cir. 2006). In fact, the issue of caution typically presents a "factual issue to be resolved by a jury." *Maben*, 887 F.3d at 267 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519-20 (6th Cir. 2008)). The timing between Plaintiff's criticisms of BBEK Environmental and Defendants' alleged retaliatory conduct will be relevant at the summary judgment stage. But, at this stage in the proceedings, the court is persuaded that Plaintiff's allegations are at least sufficient to survive dismissal. The court will deny Defendants' motions as to Count III.

### D. Invasion of Privacy (Count IV)

Finally, Plaintiff alleges a claim for a constitutional invasion of his privacy based on the public dissemination of information blaming him for the improper demolition of 14444 Flanders. Defendants argue that the publication of such information does not give rise to a constitutional violation.

"[T]he Constitution does not encompass a general right to nondisclosure of private information." *P. v. Desanti*, 653 F.2d 1080, 1090 (6th Cir. 1981). The Sixth Circuit has limited the right to informational privacy "only to interests that implicate a fundamental liberty interest." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 586 (6th Cir. 2012) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)). "Accordingly, a plaintiff alleging the violation of his informational privacy rights must demonstrate that 'the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id.* (quoting *Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998)). The Sixth Circuit has "recognized a constitutionally-protected informational-privacy interest in only two circumstances: (1) where the release of personal information may lead to bodily harm, and (2) where the released information relates to matters 'of a sexual, personal, and humiliating nature.'" *Id.* (quoting *Lambert*, 517 F.3d at 440).

Plaintiff asserts that the disclosure of his involvement in the 14444 Flanders demolition implicates his fundamental right to maintain private employment free from government intrusion. (ECF No. 25, PageID.819.) He does not argue that his claim implicates one of the recognized informational-privacy interests. As explained above, Plaintiff's allegations do not identify an alleged violation of any recognized fundamental

right or liberty interest. *See supra* Part IV.A. Accordingly, the court will grant Defendants' motions as to Count IV.[4]

### V. CONCLUSION

Plaintiff's allegations do not implicate a fundamental right or liberty interest necessary to give rise to either a procedural or substantive due process claim. The absence of such a fundamental right also dooms Plaintiff's claim for invasion of privacy. Additionally, Plaintiff's factual allegations are insufficient to give rise to an equal protection claim because he has not alleged the existence of a similarly situated comparator nor has he expressly negated the existence of every rational basis to support the policy he challenges. The court will dismiss the equal protection claim without prejudice. Count I (Due Process) and Count IV (Invasion of Privacy) will be dismissed with prejudice. However, Plaintiff has alleged just enough facts to survive dismissal at this stage on this First Amendment claim. These rulings dispose of all of Plaintiff's claims except Count III of the amended complaint. Accordingly,

IT IS ORDERED that Defendants' motions to dismiss (ECF Nos. 18, 19, 20) are GRANTED IN PART AND DENIED IN PART. The motions are GRANTED as to Count I (Due Process), Count II (Equal Protection), and Count IV (Invasion of Privacy). Count II

---

[4] Plaintiff asks the court to take judicial notice of a report issued by the City of Detroit's Auditor General, Mark Lockridge, which purports to show that the City's demolition program is "mismanaged and riddled with problems." (ECF No. 26, PageID.958.) The court will decline Plaintiff's request. While there may be no dispute that the report "exists," there could be "considerable dispute over the significance of its contents." *United States v. Bonds*, 12 F.3d 540, 533 (6th Cir. 1993) (refusing to take judicial notice of a National Research Committee report). In any event, the report is not material to the court's ultimate determination that Plaintiff's invasion of privacy claim fails as a matter of law because the information disclosed does not implicate a fundamental right or fall within the narrow class of recognized informational-privacy interests.

(Equal Protection) is dismissed WITHOUT PREJUDICE. The motions are DENIED as to Count III (First Amendment).

                                              s/Robert H. Cleland             /
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated: January 16, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 16, 2020, by electronic and/or ordinary mail.

                                              s/Lisa Wagner               /
                                              Case Manager and Deputy Clerk
                                              (810) 292-6522

S:\Cleland\Cleland\HEK\Civil\19-12183.MACDONALD.mtd.HEK.RHC.2.docx